THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RALPH PADGET, Defendant-Appellant.

(No. 72-148;

Third District—August 13, 1974.

Jack Brunnenmeyer, of Peoria, for appellant.

James Christy, Assistant State's Attorney, of Peoria, for the People.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The defendant, Ralph Padget, was tried by a jury in the Circuit Court of Peoria County after an indictment had been returned against him in which two counts charged the crime of murder and two counts charged the crime of voluntary manslaughter. The defendant was found guilty of voluntary manslaughter and was sentenced to a term of not less than five (5) nor more than fifteen (15) years in the penitentiary.

A recital of the facts which resulted in the trial of the defendant is as follows. On the evening of September 25, 1971, the defendant was the owner and operator of a tavern and discotheque known as Ralph's Playhouse. The evidence is conflicting as to whether at approximately 10 or 10:30 on the night of September 25 a James May, the ultimate victim, came into the tavern and refused to display an identification card when he attempted to purchase a drink. It is the defendant's testimony that James May did make an appearance at such time and after being refused a drink because of his youthful appearance left the tavern, but only after becoming belligerent and threatening to return and "blow off" the head of the defendant. From the record it is clear that the victim, James May, did return to the tavern at approximately 3 o'clock A.M. on September 26, 1971. After walking out of the tavern which fronts on an alley, James May met three companions and while they were conversing the defendant appeared in the tavern doorway and accused them of loitering and ordered them to move away from the premises. Immediately thereafter an argument ensued between the defendant and James May which resulted in May striking the defendant in the face with his fist. Upon being hit the defendant stepped back, drew a pistol from the holster of his security guard and then shot the victim, James May, in the chest. This wound proved to be fatal.

In this appeal it is the defendant's contention that he was not proven guilty beyond a reasonable doubt.

Directing our attention to this issue we find upon closely examining the evidence that the only discrepancy of any importance relates to what the victim did after he struck the defendant. The defendant's testimony is that after being struck the victim made a movement or motion as if reaching behind his back for a pistol or gun, the defendant's theory presumably being that it was necessary for him to shoot the victim in order to prevent the infliction of death or harm on himself. The testimony of the security guard was also to the effect that the victim made the menacing movement described by the defendant.

■■ It should be noted that a number of other occurrence witnesses testified, none of whom saw the victim make any suspicious or threatening move after he had struck the defendant. It is further pertinent to recognize that no evidence was submitted as to any gun or weapon being found on or near the body of the victim after he was shot. The judgment of a reviewing court may not be substituted for the judgment of the jury as to the credibility of witnesses and the weight to be given evidence. (*People v. Stringer*, 52 Ill.2d 564, 289 N.E.2d 631.) With the conviction of the defendant it is obvious that the jury did not believe his testimony nor that of his security guard. That there were reasons for questioning the credibility of such testimony is also quite obvious in that the defendant naturally did not wish to be convicted and that the security guard was an employee of the defendant at the time of the killing and continuously thereafter, including the time of the trial. The jury preferred to believe the testimony of other witnesses who did not see any overt threatening act or gesture on the part of the victim after he struck the defendant.

■■■ The defendant by his own testimony ruled out the defense that he was acting under an intense passion when he testified that he never did get angry at the victim. It was then incumbent upon him to convince the jury that he was put in such a position by the victim that he believed the force he used was necessary to prevent the infliction of death or great bodily harm to himself or to someone else and that his belief was a reasonable one. The crucial question is whether or not the defendant's belief was a *reasonable* one. (See Ill. Rev. Stat. 1971, ch. 38, par. 9—2(b).) The jury decided that the defendant's belief that he was using the force he did, to wit, shooting the victim, in order to prevent death to himself or another was not a reasonable belief. A further review of the evidence is unnecessary since the evidence upon which the jury based its verdict was clearly not so improbable as to raise a reasonable doubt as to the defendant's guilt, and not being so improbable a reviewing court

should not set aside a conviction. See *People v. Stringer*, 52 Ill.2d 564, 289 N.E.2d 631.

The defendant next assigns as error the trial court's refusal to give certain instructions to the jury. The defendant submitted defendant's instructions number 2 and 3 which the court refused to approve and tender to the jury. An examination of these instructions discloses that they are IPI criminal instructions numbered 7.04 and 7.06 except that the defendant added the following language to each of them, "That the defendant was not justified in using the force which he used." IPI criminal instruction 7.04 sets forth the issues necessary to be proven to sustain a charge of voluntary manslaughter based on provocation, while IPI criminal instruction 7.06 relates to the requisite issues to be proven in order to sustain a charge of voluntary manslaughter where a belief of justification is an element of the crime. Our criminal code contains a provision concerning the use of justifiable force (Ill. Rev. Stat., ch. 38, par. 7—1) and the test as to whether the use of force is warranted is whether a reasonable belief was entertained by the defendant that his actions were taken to prevent imminent threat of death or great bodily harm to himself or another. This statutory provision or guideline is the basis for IPI criminal instruction 24.06 which was given by the trial court as a People's instruction. The defendant, whose defense was that the amount of force he used, to wit, the shooting of the victim, was a justifiable use of force, was further protected and rightly so by the trial court's giving of a People's instruction which was in fact IPI voluntary manslaughter instruction 7.06.

■■ We fail to see where the trial court committed error in refusing to give defendant's instructions numbered 2 and 3. The jury was appropriately and adequately advised as to every issue presented in the case. The adding of additional language to defendant's instructions 2 and 3 could only serve to confuse the jury as to elements which were properly presented to and explained to them in other instructions. Defendant's instructions 2 and 3 were repetitious and unnecessary and the trial court was correct in refusing to give them. See *People v. Sledge*, 71 Ill.App.2d 285, 218 N.E.2d 845.

■■■ The defendant further claims that reversible error was committed by the failure of the trial court to give to the jury proper forms of verdict as to the offenses charged in the indictment. At the outset we note that this question of proper verdict forms is not properly before this court. The defendant offered no alternative form of verdict nor did he object to that tendered by the People. The trial court is under no duty to give instruction on its own motion. (*City of Chicago v. Baird*, 132 Ill.App.2d 644, 270 N.E.2d 259.) We, however, are not inclined to dispose of this claimed error on the ground that it was not properly preserved

for review since we do not deem the form of verdict given to the jury to be an incorrect one. Supreme Court Rule 451 (Ill. Rev. Stat., ch. 110A, par. 451), provides in substance that whenever applicable the relevant IPI criminal instruction be used. In the instant case the form of verdict proffered by the People without objection by the defendant was IPI criminal instruction 26.05. This instruction provides for the following form of verdict: "We the jury find the defendant Ralph Padget guilty of Voluntary Manslaughter." This is the only form of verdict presented in IPI criminal instructions for a verdict of guilty for a particular offense. In the instant case it was broad enough to cover the crime of voluntary manslaughter and to justify a finding of guilty under either the theory of intense passion or unreasonable belief as to amount of force to be used to prevent harm or death to himself. We fail to agree with the defendant that error was committed by the use of an improper form of verdict.

■■ Lastly the defendant argues that the trial court abused its discretion in refusing to grant him probation. The defendant in this case was convicted of a Class 2 felony. (See Ill. Rev. Stat., ch. 38, sec. 9—2(c).) The sentence for such a felony is to be a minimum of one (1) year and a maximum of twenty (20) years. (See Ill. Rev. Stat., ch. 38, sec. 1005—8—1(b)(3).) It is clear that the sentence imposed by the trial court, being a minimum of five (5) and a maximum of fifteen (15) years, is within the prescribed statutory limitations. The authority given reviewing courts to reduce sentences imposed by trial judges should be applied with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do appellate tribunals. (*People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673.) In the instant case the defendant was found guilty of taking the life of a fellow man and accordingly we cannot conclude that the penalty imposed is disproportionate to the crime committed and we will therefore not disturb the defendant's sentence.

■■ For the reasons stated herein the judgment of the Circuit Court of Peoria County and the conviction imposed thereon is affirmed.

Affirmed.

DIXON and STOUDER, JJ., concur.